**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

HAROLD TODD NICHOLES,

     Plaintiff,

v.                              Case No. 8:18-cv-774-T-60AEP

JOSEPH VINCENT JANO, et al,

     Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING
## IN PART DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on Defendant Deputy Sheriffs Skillman and Bryant's "Motion to Dismiss Amended Civil Rights Complaint with Supporting Memorandum of Law" (Doc. 38), filed on March 25, 2019, and "Defendant's, Officer Joseph Vincent Jano, Motion to Dismiss Amended Civil Rights Complaint with Supporting Memorandum of Law" (Doc. 45), filed on May 10, 2019.   Plaintiff Harold Todd Nicholes responded in opposition to both motions.   (Docs. 41; 48).   Upon review of the motions, responses, court file, and record, the Court finds as follows:

# Background[1]

Plaintiff sues several law enforcement officers due to the alleged use of excessive force during his arrest on January 31, 2018, in violation of the Fourth and Fourteenth Amendments.[2]   According to Plaintiff, there was an outstanding warrant for his arrest after he missed a court date on a felony theft charge.   Plaintiff claims that Defendants entered a friend's mother's house, without a search warrant, based on a tip that Plaintiff was located inside.   Plaintiff alleges that Defendants yelled for him to come out and threatened to release the dog.   Plaintiff then "decide[d] to hide himself in the bedroom closet" as the "Defendants barged in the house, unleashed the dog and went room by room throughout the house."

The K-9 was allowed off leash to search for Plaintiff and found him in a closet.   According to Plaintiff, the K-9 bit his arms and his right leg as it dragged him out of the closet.   Once he was at the opening of the closet, Plaintiff claims that Defendants punched and kicked him while the dog continued to bite his arm, resulting in injuries to his ribs, back, and arm.

---

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint for purposes of ruling on the pending motions to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").   The Court is not required to accept as true any legal conclusions couched as factual allegations.   *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[2] The Court previously dismissed the Polk County Sheriff's Office and Polk County Internal Affairs Office as Defendants in this action.   *See* (Doc. 40).

Following his arrest, Plaintiff was taken to the hospital where he received medical care.   As relief, Plaintiff seeks compensatory damages, punitive damages, and attorney's fees and costs.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."   Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."   *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint.   *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).   Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."   *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).   "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the

case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. 2009) (Lazzara, J.).

As Plaintiff is proceeding *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform with procedural rules and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

### *Shotgun Pleading*

Defendants first argue that the complaint should be dismissed as a shotgun pleading because Plaintiff lumps individual and institutional defendants together, asserting that they are each liable for excessive force without any attempt to separate out counts as to each Defendant with the supporting facts as to each Defendant.

Upon review, the Court finds that Plaintiff's allegations provide sufficient notice of the nature of its claims against Defendants. "Rule 8 does not require a plaintiff to bring separate claims against each defendant as long as each defendant has notice of the specific claims against it." *Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc.*, Case No. 5:17-cv-187-Oc-34PRL, 2017 WL 6319549, at *6 (M.D. Fla. Dec. 11, 2017) (citing *Kyle*

*K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)).   The complaint can be fairly read to aver which Defendants are responsible for which alleged acts and omissions.   *See id.*   As a result, the motions to dismiss are denied as to this ground.

### Qualified Immunity

Defendants next argue that they are entitled to qualified immunity as to Plaintiff's excessive force claims.   Because Defendants were working under the authority of the Polk County Sheriff's Office at the time of the incident, Plaintiff must overcome their right to claim qualified immunity. *See Cornett v. City of Lakeland*, No. 8:06-cv-2386-T-17TBM, 2008 WL 2740328, at *7 (M.D. Fla. July 10, 2008).

"Qualified immunity is an immunity from suit rather than a mere defense to liability."   *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation omitted). Consequently, it is important to resolve questions of immunity at the "earliest possible stage in litigation."   *Id*. at 231.   A qualified immunity defense may be raised in a motion to dismiss and resolved prior to discovery.   *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Corbitt v. Vickers,* 929 F.3d 1304, 1311 (11th Cir. 2019); *Barbee v. Naphcare, Inc.*, 216 F. App'x 851, 853 (11th Cir. 2007).

Generally, it is appropriate to dismiss a complaint on qualified immunity grounds "when the complaint fails to allege the violation of a clearly established right."  *Corbitt*, 929 F.3d at 1311 (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

As the United States Supreme Court has explained,

> The doctrine of qualified immunity protects
> government officials from liability for civil damages
> insofar as their conduct does not violate clearly
> established statutory or constitutional rights of
> which a reasonable person would have known.
> Qualified immunity balances two important
> interests – the need to hold public officials
> accountable when they exercise power irresponsibly
> and the need to shield officials from harassment,
> distraction, and liability when they perform their
> duties reasonably.   The protection of qualified
> immunity applies regardless of whether the
> government official's error is a mistake of law, a
> mistake of fact, or a mistake based on mixed
> questions of law and fact.

*Pearson*, 555 U.S. at 231. (internal quotations and citations omitted).   To overcome a qualified immunity defense, a plaintiff must establish (1) the allegations make out a violation of a constitutional right; and (2) if so, the constitutional right was clearly established at the time of the defendant's alleged misconduct.   *Id*. at 232 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *Corbitt*, 929 F.3d at 1311.   However, courts may exercise their discretion when deciding which of the two prongs should be addressed first, depending

upon the unique circumstances in each particular case.   *Pearson*, 555 U.S. at 236; *Corbitt*, 929 F.3d at 1311.   In fact, a court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all."   *See Reichle v. Howards*, 566 U.S. 658, 665 (2012).

"For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"   *Corbitt*, 929 F.3d at 1311 (quoting *Anderson*, 483 U.S. at 640).   After all, officials are not obligated "to be creative or imaginative in drawing analogies from previously decided cases," and a general "awareness of an abstract right . . . does not equate to knowledge that [an official's] conduct infringes the right."   *Id*. at 1311-12 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011)).   "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."   *Shuford v. Conway*, 666 F. App'x 811, 816-17 (11th Cir. 2016) (quoting *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

<u>Use of K-9</u>

To the extent that Plaintiff argues the use of the K-9 and resulting injuries support an excessive force claim, the Court finds that Defendants are entitled to qualified immunity.   Because the Court is considering the qualified immunity issue at this stage of the proceedings, it relies on the well-pleaded facts alleged by Plaintiff in his amended complaint.   Accepting the well-pleaded facts as true, the Court finds that clearly established law does not show that use of the K-9 in this case violated the Constitution.

In *Cornett v. City of Lakeland*, the court addressed an excessive force claim under strikingly similar circumstances.   As Judge Kovachevich explained, "[t]he use of police canines to apprehend suspects is not excessive force *per se*."   *Cornett*, 2008 WL 2740328, at *5.   Instead, law enforcement officers may "use the amount of force that is objectively reasonable" to carry out the arrest, based on the totality of the circumstances.   *Id*.   These factors include: "the severity of the crime at issue, whether the suspect posed an immediate safety threat, and whether the suspect was actively resisting or attempting to evade arrest."   *Id*.

In this case, an arrest warrant was issued after Plaintiff missed a court date in his felony theft case.   After Plaintiff had taken refuge in the home of his friend's mother, the law enforcement officers announced their

presence and threatened to release the K-9.   Rather than complying with their commands, Plaintiff decided to flee and hide in a closet.   When Plaintiff did not respond to warnings and fled from the officers, he did not overtly surrender himself, instead leading the police to search the various rooms of the house to apprehend him.   It is clear that a reasonable officer could have been concerned, at the time the K-9 was released, about entering the various rooms to apprehend Plaintiff and being met by a potential ambush.   *See Jones v. Fransen*, 857 F.3d 843, 854 (11th Cir. 2017).

The facts here are not identical to any of the seminal K-9 cases of the Eleventh Circuit – *Priester*,[3]  *Crenshaw*,[4]  and *Jones* – and appear to land somewhere in between.   Consequently, these cases could not have provided Defendants "with the type of 'fair notice' necessary to breach qualified immunity," particularly since *Priester* reached a different conclusion than *Crenshaw* and *Jones*.   *See id.*

For these reasons, the Court finds that Plaintiff's constitutional right to be free from excessive force under these circumstances was not clearly established when Defendants engaged in the challenged conduct.   Therefore, Defendants are entitled to qualified immunity as to the excessive force claims related to the use of the K-9.   *See id.* at 853-55 (holding right to be free from

---

[3]  *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000).
[4]  *Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009).

excessive force in context of dog-bite was not clearly established at the time of the violation where officers used K-9 to apprehend suspect accused of domestic-related theft crime). The motions to dismiss are granted as to the asserted defense of qualified immunity based on the use of the K-9.

<u>Other Force Used</u>

To the extent that Plaintiff alleges that punching and kicking by Defendants during his arrest constitutes excessive force under the Fourth Amendment, the Court finds that Defendants have not established that they are entitled to qualified immunity at this time. Here, Plaintiff contends that Defendants beat him even though he offered no resistance after being removed from the closet that he was hiding in and while he was begging for help because the K-9 had a hold of him. At this stage of the proceedings, the Court is required to draw all inferences in light most favorable to Plaintiff. As such, the Court cannot conclude that Defendants are entitled to qualified immunity as to the excessive force claims related to the alleged punching and kicking at the time of Plaintiff's arrest. *See Smith v. Mattox*, 127 F.3d 1416, 1419-20 (11th Cir. 1997) (explaining that if the court must assume that the plaintiff was offering no resistance, the amount of force used was "obviously unnecessary to restrain even a previously fractious arrestee"). The motions to dismiss are therefore denied as to this asserted defense under the Fourth

Amendment.   This, however, does not mean that Defendants may not be

entitled to immunity later in the proceedings.   *See id*. at 1420.

### Fourteenth Amendment Claims

Defendants argue that Plaintiff cannot state a cause of action under

the Fourteenth Amendment.   Pretrial detainees enjoy the protection

afforded by the Due Process Clause of the Fourteenth Amendment, which

ensures that no state shall "deprive any person of life, liberty or property,

without due process of law."   U.S. Const. Amend. XIV.   To the extent that

Plaintiff alleges his Fourteenth Amendment rights were violated during his

arrest, the Court finds that he cannot state a claim for relief because he was

not a pretrial detainee at the time the arrest occurred.   *See, e.g., C.P. by and

through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1091-92 (M.D. Fla. 2015)

(dismissing Fourteenth Amendment claim where allegations of excessive

force solely related to excessive force using during arrest of the plaintiff).

To the extent that this claim is based on the alleged failure of

Defendants to provide appropriate medical care after his arrest, the Court

could construe this as a Fourteenth Amendment challenging the conditions of

his confinement as a pretrial detainee since the conduct occurred following

Plaintiff's arrest.   "The Fourteenth Amendment governs claims of medical

indifference to the needs of pretrial detainees while the Eighth Amendment

applies to claims of convicted prisoners."   *Youmans v. Gagnon*, 626 F.3d 557,

563 n.6 (11th Cir. 2010).   A plaintiff alleging deliberate indifference to

serious medical need in violation of the Fourteenth Amendment must

demonstrate: (1) a serious medical need; (2) the defendant['s] deliberate

indifference to that need; and (3) causation between that indifference and the

plaintiff's injury."   *Id*. (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291,

1306-07 (11th Cir. 2009)).

According to Plaintiff, he was taken to the hospital immediately

following his arrest, where he received bandages and x-rays.   His asserted

injuries were not life-threatening such that would require the officers to do

more than what they did, which is take him to the hospital.   He remained at

the hospital for four hours before being transported to the jail.   Under these

facts, Plaintiff cannot state a Fourteenth Amendment claim based on the

police officers' failure to provide appropriate medical care.

For these reasons, the motions to dismiss are due to be granted as to

this ground, and Plaintiff's Fourteenth Amendment claims are dismissed

with prejudice.

### *Official Capacity Claims*

Defendants contend that Plaintiff has failed to allege facts that would

permit him to hold Defendants liable in their official capacity.   Official

capacity and individual capacity are commonly confused with the requirement that, to assert a civil rights action under 42 U.S.C. § 1983, the defendant must act "under color of law."   The "under color of law" requirement means that the defendant must have acted as an agent of a government — whether state, county, or city.   For example, a government employee who causes an injury while performing a governmental duty acts "under color of law," but the same employee who causes an injury while not performing a governmental duty does not act "under color of law."

An allegation that an employee was involved in causing an injury while performing a governmental duty meets the "under color of law" requirement for a claim against the employee in his individual (or personal) capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").   An action against a defendant in his individual capacity seeks to hold the defendant personally liable for his actions.

Here, Plaintiff does not sufficiently allege any official capacity claims against Defendants because he has failed to allege (1) that the Defendants possessed any final policymaking authority, or (2) any facts to demonstrate that an official policy or custom caused his injuries.   Consequently, the motions to dismiss are granted as to this argument, and the official capacity

claims against Defendants are dismissed with prejudice.

It is therefore

**ORDERED, ADJUDGED,** and **DECREED:**

(1)     Defendant Deputy Sheriffs Skillman and Bryant's "Motion to
        Dismiss Amended Civil Rights Complaint with Supporting
        Memorandum of Law" (Doc. 38) and "Defendant's, Officer Joseph
        Vincent Jano, Motion to Dismiss Amended Civil Rights Complaint
        with Supporting Memorandum of Law" (Doc. 45) are hereby
        **GRANTED IN PART** and **DENIED IN PART**.

(2)     The motions are granted to the extent that Plaintiff's Fourth
        Amendment excessive force claims based on the use of the K-9 are
        hereby **DISMISSED WITH PREJUDICE** because Defendants are
        entitled to qualified immunity.

(3)     The motions are granted to the extent that Plaintiff's Fourteenth
        Amendment claims are **DISMISSED WITH PREJUDICE**.

(4)     The motions are further granted to the extent that Plaintiff's
        official capacity claims against Defendants are **DISMISSED WITH
        PREJUDICE**.

(5)     The motions to dismiss are denied in all other respects.   This
        action proceeds under the Fourth Amendment against Defendant

Deputy Sheriffs Skillman, Bryant, and Jano, based on their alleged use of excessive force (other than the use of the K-9) during Plaintiff's arrest.

(6)   Defendants are directed to file an answer on or before June 22, 2020.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>22nd</u> day of May, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**